EDDIE RAY CRUMP v. BOARD OF EDUCATION OF THE HICKORY ADMIN-
ISTRATIVE SCHOOL UNIT, WILLIAM PITTS, LOIS YOUNG, BARBARA
A. GARLITZ, RUEBELLE A. NEWTON, C. JOHN WATTS III, AND LARRY
O. ISENHOUR

No. 171A89

(Filed 13 June 1990)

1. **Schools § 13.2 (NCI3d)— teacher dismissal—bias by single school board member—violation of due process**

    A single school board member's bias against the teacher at a teacher dismissal hearing taints the entire board's decision-making process and denies the teacher due process regardless of whether the bias affected the correctness of the board's decision.

    **Am Jur 2d, Schools §§ 192, 193.**

2. **Appeal and Error.§ 566 (NCI4th)— teacher dismissal—direct review proceeding—law of the case—issue preclusion—inapplicability to bias claim**

    Plaintiff teacher's civil rights claim for damages based on alleged bias of the board of education which dismissed him was not finally decided against him in the direct judicial review of the board's decision to terminate him and the subsequent appeal of that judicial review to the Court of Appeals and was thus not barred by either the law of the case or the doctrine of issue preclusion where the trial court, upon motion by the board, severed plaintiff's two separate claims and conducted its direct judicial review of the board's dismissal decision separately from the trial of the civil rights action; although an assignment of error by plaintiff in the Court of Appeals recited language in the superior court judgment finding that the board's decision was not biased, plaintiff did not raise or argue that specific point before the Court of Appeals; in the direct review proceeding, the parties, superior court and Court of Appeals all focused on the question of whether the board's findings and conclusions in its dismissal decision were supported by substantial evidence in the whole record; no evidence of the type of "concealed" bias, the type of bias leading to the civil rights claim, was in the record made by the board, and plaintiff was given no opportunity to present such evidence on direct judicial review; and the bias claim

thus could not have been reached by the superior court in its direct judicial review of the board's action dismissing plaintiff.

**Am Jur 2d, Schools §§ 192, 193.**

3. **Schools § 13.2 (NCI3d) — teacher dismissal hearing — property and liberty interests — right to due process**

A career teacher charged with immorality and insubordination was entitled to a dismissal hearing which complied with principles of due process since the teacher had a cognizable property interest in his continued employment and a constitutionally protected liberty interest was implicated.

**Am Jur 2d, Schools §§ 192, 193.**

4. **Constitutional Law § 17 (NCI3d) — civil rights action — concurrent jurisdiction of state and federal courts**

State courts have concurrent jurisdiction with federal courts over civil rights actions brought under 42 U.S.C. § 1983.

**Am Jur 2d, Civil Rights §§ 99, 263-269.**

5. **Schools § 13.2 (NCI3d) — teacher dismissal — bias by one board member — denial of due process**

If a school board member had made a fixed decision prior to a teacher dismissal hearing to vote against the teacher based on factual information obtained outside the hearing process, that board member was biased against the teacher, and such member's participation in the teacher's dismissal hearing would deny the teacher procedural due process no matter what outcome the board reached at the hearing.

**Am Jur 2d, Schools §§ 192, 193.**

6. **Schools § 13.2 (NCI3d) — teacher dismissal — pre-hearing knowledge of allegations not biased**

School board members with pre-hearing knowledge regarding the allegations against a teacher would neither necessarily nor presumptively be biased against him. However, when performing their quasi-judicial function during a board hearing and any resulting deliberations, school board members must be able to set aside their prior knowledge and preconceptions concerning the matter at issue, and base their considerations solely upon the evidence adduced at the hearing.

**Am Jur 2d, Schools §§ 192, 193.**

7. **Constitutional Law § 17 (NCI3d); Schools § 13.2 (NCI3d) — teacher dismissal — civil rights action — bias of school board member — sufficient evidence for jury**

The trial court properly submitted a dismissed teacher's 42 U.S.C. § 1983 claim for damages to the jury for its determination as to whether a school board member had in fact been biased against the teacher in the dismissal proceeding where there was substantial evidence that, at the board's hearing, one or more board members consciously concealed both prior knowledge of the allegations against the teacher and a fixed predisposition against him.

**Am Jur 2d, Schools §§ 192, 193.**

8. **Schools § 13.2 (NCI3d) — teacher dismissal hearing — requirement of due process**

Whether a school board's decision-making process in a teacher dismissal hearing should be termed administrative or quasi-judicial, the board's action involving resolution of disputed facts and selection among alternate sanctions was required to afford the teacher, at a minimum, an unbiased hearing in accord with principles of due process.

**Am Jur 2d, Schools §§ 192, 193.**

9. **Schools § 13.2 (NCI3d) — teacher dismissal — bias of school board member — hearing result and spread of bias irrelevant to due process question**

Neither the result reached at a teacher dismissal hearing nor the spread of one school board member's bias to a sufficient number of other members to have determined the result is determinative on the question of whether the school board's procedure was fundamentally unfair and thus denied the teacher due process, since one board member's fixed bias is sufficient to cause the hearing process to deny due process even though the hearing result itself can be justified.

**Am Jur 2d, Schools §§ 192, 193.**

10. **Constitutional Law § 17 (NCI3d); Schools § 13.2 (NCI3d) — civil rights action — teacher dismissal — bias by school board member — due process violation — compensatory damages**

Where the jury in a § 1983 civil rights action determined from the evidence at trial that one or more school board

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

members were biased against plaintiff teacher at a dismissal hearing, the jury was justified in returning a verdict finding that the school board's hearing denied plaintiff due process and awarding plaintiff $78,000 in compensatory damages for the due process violation.

**Am Jur 2d, Schools §§ 192, 193.**

11. **Constitutional Law § 17 (NCI3d); Schools § 13.2 (NCI3d) — dismissed schoolteacher — injury from due process violation — damages**

In order for a dismissed schoolteacher to recover more than nominal damages on his § 1983 due process claim, the teacher must have been injured by the due process violation itself, and not merely by distress caused by a deprivation of his constitutionally protected interest in his job.

**Am Jur 2d, Schools §§ 192, 193.**

12. **Judgments § 3 (NCI3d) — conformity to pleadings and verdict**

Where plaintiff sought compensatory damages only from defendant board of education and only punitive damages from the individual defendants, and the jury returned its verdict awarding only compensatory damages, the trial court's judgment should have ordered that the damages and costs be recovered from defendant board and not from the other defendants individually.

**Am Jur 2d, Pleadings §§ 382, 383; Schools § 211.**

Justice MEYER dissenting.

Justice MARTIN dissenting.

Justice WHICHARD dissenting.

APPEAL by the defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 93 N.C. App. 168, 378 S.E.2d 32 (1989), affirming a judgment entered by *Sitton, J.,* on 19 November 1987 in Superior Court, CATAWBA County. Heard in the Supreme Court on 11 December 1989.

## CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., by John W. Gresham, for the plaintiff-appellee.*

*Mitchell, Blackwell, Mitchell & Smith, P.A., by Thomas G. Smith, and Sigmon, Clark and Mackie, P.A., by E. Fielding Clark II, for the defendant-appellants.*

*George T. Rogister, Jr. and Jonathan A. Blumberg for the North Carolina School Boards Association, amicus curiae.*

MITCHELL, Justice.

[1]   The issue before us is whether, at a teacher dismissal hearing, a single school board member's bias against the teacher taints the entire board's decision-making process, denying the teacher due process and entitling him to compensatory damages, regardless of whether the bias affected the correctness of the board's decision. We conclude that such bias makes the decision-making process inherently unfair and violates due process.

The facts relevant to the issue presented include the following: On 7 June 1984, the defendant-appellants, the Hickory Board of Education and its individual members, dismissed the plaintiff-appellee, Eddie Ray Crump, from his teaching position at Hickory High School based on findings of immorality and insubordination. Following his dismissal, Crump filed a joint petition and complaint with the Superior Court. His petition pursuant to N.C.G.S. § 115C-325 for direct judicial review of the Board's action dismissing him alleged that the evidence introduced at the Board's hearing was insufficient to support its findings. His complaint initiating this separate civil action under 42 U.S.C. § 1983 alleged that the defendants had acted with bias against him, in violation of his due process rights under the state and federal constitutions, as well as in violation of the statutory protections codified at N.C.G.S. § 115C-325. Crump sought damages in this civil action under 42 U.S.C. § 1983, including compensatory damages from the Board and punitive damages from its individual members.

Upon the defendants' motion, the trial court severed the two separate claims brought by Crump, and conducted its direct judicial review of the Board's decision to dismiss him separately from the trial of this civil action. Thereafter, on direct review of the Board's action, the superior court upheld the Board's decision to dismiss Crump. Crump appealed that decision to the Court of Appeals,

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

which affirmed the superior court in *Crump v. Board of Education*, 79 N.C. App. 372, 339 S.E.2d 483, *disc. rev. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). Thus, the Board's decision to dismiss Crump has been made final and is not before us on this appeal. This appeal only presents questions of procedural fairness during the School Board's hearing, which were raised by Crump in this separate civil action seeking damages as a result of the Board's alleged bias and the resulting denial of due process at the Board's hearing. In support of his § 1983 action, Crump alleged this denial of due process by the Board caused him injury separate and distinct from his mere dismissal.

The separate civil action presenting Crump's due process claim, the sole subject of this appeal, was tried before a jury at the 16 November 1987 session of Superior Court, Catawba County. Crump based his claim of bias and resulting denial of due process on evidence at trial tending to show disparities between the actual pre-hearing knowledge of and involvement with Crump's situation by certain Board members, and their disavowals of knowledge of the matter when asked about it at the Board's hearing.

At the Board's dismissal hearing, Crump's attorney, James Fuller, questioned Board members about their ability to be fair and impartial:

Mr. Fuller: . . . I want to be perfectly blunt about it and ask the Board . . . the extent to which any of you have been personally involved, have discussed with people who have knowledge and whether any of you have formed any kind of preconceived notions. I don't mean that in a pejorative sense but just as matter of being brutally candid. Has anybody on the Board either because of the publicity, because of what you have heard from [the] administration, from friends, neighbors, from anyone else, whether you have any problem at all being completely fair to Mr. Crump? And again, I don't mean fair in the sense of you will try to be fair, but can you honestly say the scales are even now . . . .

Mr. Pitts: That's a fair question. I am glad you addressed that right up front because several months ago the Board was aware that some form of hearing was coming down the pike. The administration, the attorney, has not ever revealed anything until we received this letter in the mail yesterday hand delivered of any charges or any statements. Now I can

## CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

speak for myself. But the attorney has asked all members of the Board not to discuss any aspect of anything that they may hear. If someone calls them on the phone, they are not to respond in any way. I can speak for myself to say that for me at this point in time the slate is clear.

Ms. Newton: The same thing. In fact we have not even been given a name whenever we were told a hearing was coming up. And I have not been approached by anybody. And if mention was made of it, I just said I know nothing. And whatever judgment would be made has to be done on what we hear tonight.

Mr. Isenhour: The same.

Ms. Garlitz: The same. I have had people that made statements to me, and I have not responded in any way. And I did not know until the letter came yesterday what this was about.

Mr. Watts: Frankly, I feel that I can be as objective as anybody on this Board. Obviously when a newspaper that is published on a county-wide basis comes out and indicates that a teacher is being brought up for charges, I read the article because I'm on the School Board and the teacher happens to be in my system. Other than that, there has been no preliminary information except for this notice we got yesterday afternoon late in the afternoon with the charges. I think I have a fairly good grasp of what we're here for and hopefully will be able to give every bit of the evidence full weight.

Ms. Young: I had one call, and I said, "I have no comments." And I have not said one word anywhere. And when I go, I listen and I vote my convictions.

Subsequent evidence suggested, however, that not all of the Board members had been entirely candid in their answers. During Principal Williamson's testimony at the Board's hearing, Board member Isenhour asked him, "[a]re you aware of the fact that we had parents who will not let their daughters take driver's education because of this situation, that they're sending their daughters to the private school?" At the later trial of this civil action, however, Isenhour acknowledged that no evidence before the Board during its hearing tended to show that female students at Hickory High School were taking driver's education elsewhere for any reason.

Hal Bolick, a teacher at Hickory High School, testified at trial that several months before the Board's hearing, Board Chairman

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

Pitts told him that the Board could not "overlook" the "letters about [Crump's conduct with] the little girls." Bolick further testified regarding conversations with Board member John Watts prior to the Board's dismissal hearing. Bolick testified that he had "advised" Watts of pre-hearing conversations regarding Crump between Bolick and one of the students who later testified against Crump at the hearing. Bolick also testified that, after the hearing, Watts told Bolick "that things that had gone on in the [hearing] room itself didn't seem like the Board members were listening, that they seemed to have made up their minds before they went in." Board member Watts testified at trial, however, that he did not recall making such a statement to Bolick.

Roger Henry, a former teacher, testified that in March 1984, prior to the Board's hearing, Board member Watts told him that the charges against Crump "didn't look good, that they were concerned, and mentioned [Board member] Garlitz and [Chairman] Pitts and [that Crump] . . . needed to resign [and would Henry] do anything about it." When asked at trial whether he denied that the conversation with Henry had occurred, Watts answered, "I won't deny it or confirm it, sir."

Bruce Crump (no relation to the plaintiff-appellee), another former teacher, testified that in the spring of 1984, prior to the Board's hearing, he witnessed Board member Lois Young tell Principal Williamson, "We're all together on this Crump thing." Bruce Crump also testified that no matters involving him were pending with the Board at the time he heard Young make the statement about the "Crump thing." Neither Young nor Williamson testified at trial.

The plaintiff-appellee Eddie Crump testified that he had a conversation with Board member Young after his dismissal. Crump testified that during their conversation, Young told him that prior to the Board's hearing Principal Williamson had promised the Board members that Crump would resign rather than endure a dismissal hearing and thus bring embarrassment upon his wife.

The jury found that the Board had failed to "provide [Crump] a fair hearing before an unbiased hearing body," and that Crump had suffered resulting actual damages of $78,000, but awarded no punitive damages. The trial court entered judgment accordingly. A divided panel of the Court of Appeals affirmed the trial court's judgment.

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

I.

[2] As a preliminary matter, we address one point raised by the dissents in this case. Although using differing terminology, the dissents argue that Crump's bias claim was previously and finally decided against him in the direct judicial review of the Board's decision to terminate him and the subsequent appeal of that judicial review to the Court of Appeals. *See Crump v. Board of Education,* 79 N.C. App. 372, 339 S.E.2d 483, *disc. rev. denied,* 317 N.C. 333, 346 S.E.2d 137. Thus, the dissents argue that Crump's bias claim in this case is barred by either the law of the case or the doctrine of issue preclusion. We disagree.

In response to Crump's amended complaint, the Board moved to separate the superior court's proceeding on direct judicial review of the Board's decision from Crump's 42 U.S.C. § 1983 civil claim. Alternately, the Board moved under N.C.G.S. § 1A-1, Rule 12(c) to dismiss the § 1983 suit, arguing that all claims raised in Crump's amended complaint were within the scope of the direct judicial review of the Board's decision. Although the records in these cases are not clear regarding when the motion to sever was granted, the Board, in its brief to the Court of Appeals during the appeal of the superior court's direct judicial review of the Board's decision, argued that "[t]he two claims are clearly divisible and defendants in this [direct review] action have moved to sever these actions. The trial court has not ruled on the motion to sever, *but the case has proceeded as if the matters involved were in separate lawsuits.*" (Emphasis added.)

In Judge Sitton's judgment in the direct judicial review proceeding, he plainly stated that

> The court has reviewed the entire record made before the Board and has applied the 'whole record test' in reviewing the evidence to determine whether the Board's decision is supported by substantial, material, and competent evidence. . . .

After a thorough and careful review of the transcript, exhibits, briefs, and arguments of counsel, the court finds and concludes that the Board's findings, inferences, and conclusions; underlying its decision to dismiss Mr. Crump, and the Board's decision to terminate and dismiss Eddie Ray Crump, are supported by competent, material, and substantial evidence in *view of the entire record as submitted* . . . .

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

The court further finds and concludes that the action [of] the Board to dismiss Crump was not biased, arbitrary or capricious; . . . but instead was based on substantial evidence *viewing the record as a whole.*

(Emphasis added.)

Crump appealed that judgment to the Court of Appeals, assigning as error that the superior court's findings and conclusions were not supported by substantial evidence in the whole record. Although Crump's recitation of the judgment's wording in his first assignment of error in that appeal included the superior court's finding that the Board's decision was not biased, Crump did not seek to raise or argue that specific point before the Court of Appeals. Instead, the parties and the Court of Appeals all focused on the same question which had been before the superior court in the direct review proceeding, after that proceeding had been separated from the § 1983 action: whether the Board's decision to dismiss Crump was "supported by competent, material, and substantial evidence *in view of the entire record as submitted.*" (Emphasis added.) Evidence of one or more Board members' bias during the Board's hearing was *not* evident in the record made before the Board, because the Board members had concealed such bias when questioned by Crump's attorney. Further, Crump was afforded no opportunity during the direct judicial review proceeding to present evidence of bias. Thus, the superior court could not have evaluated, "in view of the entire record made before the Board," any Board member's *concealed* bias.

The only "bias" the superior court could have searched for during its direct review of the Board's action was that which might have facially appeared in the record if the evidence before the Board had not supported its findings of improper conduct by Crump. No evidence of the type of bias leading to Crump's § 1983 action was in the record made by the Board, and Crump was given no opportunity to present such evidence on direct judicial review. Thus, his § 1983 bias claim could not have been reached by the superior court on its direct judicial review of the Board's action dismissing him. Our conclusion is buttressed by the fact that the same superior court judge who conducted the direct judicial review of the Board's decision to dismiss Crump *also* presided over the trial of this separate action arising from Crump's § 1983 claim. Judge Sitton obviously knew that, due to his severance of the

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

plaintiff's claims at the defendants' request, the allegations of bias supporting the § 1983 claim had not been before him or decided by him when he had conducted the prior direct judicial review proceeding.

As a final point on this topic, we do agree with Justice Martin, to the extent that he says in his dissent that "[i]n any event where justice and right are concerned, this Court has never allowed manifest injustice to prevail based upon some procedural technicality in a trial or appeal." (Citation omitted.) We will not allow any such result in this case. The Board argued in the appeal of the superior court's direct judicial review proceeding that the direct review proceeding and Crump's § 1983 civil claim were "clearly divisible" and that all concerned had treated them separately. Yet, in its argument to the Court of Appeals in this case, the Board argued, as the dissents now contend, that the direct judicial review proceeding resolved the sole issue underlying this § 1983 action. What the Board used as a sword to sever the two actions cannot now be used by it as a procedural shield from potential liability. Crump's separate civil action under § 1983 is not barred by either the law of the case or the doctrine of issue preclusion.

II.

The Court of Appeals concluded that in this separate civil action under § 1983, the trial court "correctly instructed the jury that the bias of *one* member of the Board was sufficient for the jury to find that Mr. Crump had been deprived of a fair hearing." *Crump v. Board of Education*, 93 N.C. App. 168, 185, 378 S.E.2d 32, 34 (1989) (emphasis added). For the reasons discussed below, we too find no error in the trial court's instructions and affirm the decision of the Court of Appeals. We begin our analysis with some foundational concepts concerning due process, bias, and school boards.

A. *Due Process*

[3] Whenever a government tribunal, be it a court of law or a school board, considers a case in which it may deprive a person of life, liberty or property, it is fundamental to the concept of due process that the deliberative body give that person's case fair and open-minded consideration. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchinson*, 349 U.S. 133, 136, 99 L. Ed. 942, 946 (1955). As a career teacher under

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

N.C.G.S. § 115C-325, Crump had a cognizable property interest in his continued employment. *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 576-78, 33 L. Ed. 2d 548, 560-61 (1972). Further, Crump's constitutionally-protected liberty interest was implicated, since the

> charge impair[ed] his reputation for honesty or morality. The procedural protections of due process apply ·if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law.

*Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 777-78 (9th Cir. 1982) (Kennedy, J.) (footnotes omitted); *see Board of Regents v. Roth*, 408 U.S. at 572, 33 L. Ed. 2d at 558. With his fundamental rights so implicated, Crump was entitled to a hearing according with principles of due process. "[A] Board of Education conducting a [dismissal] hearing under G.S. 115-142 [now § 115C-325] must provide all essential elements of due process." *Baxter v. Poe*, 42 N.C. App. 404, 409, 257 S.E.2d 71, 74, *disc. rev. denied*, 298 N.C. 293, 259 S.E.2d 298 (1979).

[4] Crump brought his due process claim under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

While this statute has been the subject of many federal opinions and scholarly articles, North Carolina appellate courts have addressed the statute only infrequently..It is clear, however, that § 1983 works to create " 'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 55 L. Ed. 2d 252, 258 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 47 L. Ed. 2d 128, 136 (1976), and 42 U.S.C. § 1983 (1982) ). State courts have concurrent jurisdiction with federal courts over § 1983 actions. *See Williams v. Greene*, 36 N.C. App. 80,

243 S.E.2d 156, *disc. rev. denied and appeal dismissed,* 295 N.C. 471, 246 S.E.2d 12 (1978).

We recognize that due process is a somewhat fluid concept, and that determining what process is "due" at a school board hearing is very different from evaluating the procedural protections required in a court of law. "Determining what process is due in a given setting requires the Court to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it." *Hortonville Dist. v. Hortonville Ed. Assn.,* 426 U.S. 482, 494, 49 L. Ed. 2d 1, 10 (1976) (citing cases).

B. *Bias*

An unbiased, impartial decision-maker is essential to due process. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 271, 25 L. Ed. 2d 287, 301 (1970) (citing cases); *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 779 (9th Cir. 1982); *Leiphart v. N.C. School of the Arts,* 80 N.C. App. 339, 354, 342 S.E.2d 914, 924, *cert. denied,* 318 N.C. 507, 349 S.E.2d 862 (1986). As discussed below, this case turns on the question of what evidence will suffice to support a jury's determination, as here, that a decision-maker is biased, when the decision-maker is a group of persons.

While the word "bias" has many connotations in general usage, the word has few specific denotations in legal terminology. Bias has been defined as "a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction," Black's Law Dictionary 147 (5th ed. 1979), or as "a sort of emotion constituting untrustworthy partiality," 10 C.J.S. *Bias* (1955 & Supp. 1989) (footnote omitted). "Some sort of commitment is necessary for disqualification [due to bias], even though it is less than an irrevocable one." 3 Davis, *Administrative Law Treatise 2d* § 19:4 at 385 (1980). Bias can refer to preconceptions about facts, policy or law; a person, group or object; or a personal interest in the outcome of some determination. *See id.* ch. 19. Crump's complaint commencing the civil action now before us on appeal alleged that one or more Board members came into his hearing having already decided to vote against him, based on "factual" information obtained outside the hearing process. This type bias can be labeled a "prejudgment of adjudicative facts." *Id.* § 19:4.

The trial court in this case gave the jury a lengthy explanation of the heavy burden a plaintiff must bear to succeed in proving

that a school board acted towards him or her with bias. The trial court began by explaining the presumption of correctness afforded school board actions, then instructed the jury that:

> To prove impermissible bias of the hearing body the plaintiff must show or prove by its greater weight more than the fact that a board member or members had some knowledge of some fact or facts concerning a charge or charges against a teacher. Mere familiarity with a fact or facts or charge or charges does not automatically disqualify a board member as a decision maker.
>
>      . . . .
>
> I instruct you that a board member's obligation is to be able to put aside anything read or heard prior to a hearing and base a decision solely upon the sworn testimony and evidence during a hearing.
>
> To find impermissible bias you, the jury, must find by the greater weight of the evidence that the mind of a board member was predetermined and was fixed and not susceptible to change prior to the deliberating process of the hearing board, and that the decision was not based solely upon evidence during the hearing.

[5] The quoted instructions given by the trial court concerning decision-maker bias were free of error. If a Board member had made a fixed decision, prior to the Board's hearing, to vote against Crump, that member was biased against him. One such Board member's participation in Crump's dismissal hearing would cause that hearing to deny Crump procedural due process, no matter what outcome the Board reached at the hearing.

C. *School Boards*

[6] Distinguishing a Board member's disqualifying *bias* against Crump from permissible pre-hearing *knowledge* about Crump's case is essential to our analysis. Members of a school board are expected to be knowledgeable about school-related activities in their district. Board members will sometimes have discussed certain issues that later become the subject of board deliberations; such knowledge and discussions are inevitable aspects of their multi-faceted roles as administrators, investigators and adjudicators. However, when performing their quasi-judicial function during a board hearing and

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

any resulting deliberations, members must be able to set aside their prior knowledge and preconceptions concerning the matter at issue, and base their considerations solely upon the evidence adduced at the hearing. In an analogous case before the United States Court of Appeals for the Ninth Circuit, Judge (now Justice) Anthony Kennedy wrote:

> The key component of due process, when a decisionmaker is acquainted with the facts, is the assurance of a central fairness at the hearing. . . .
>
> . . . .
>
> . . . Members of a school board in smaller communities may well have some knowledge of the facts and individuals involved in incidents which they must evaluate. Their obligation is to act impartially and in a fair manner.

*Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 779-80 (9th Cir. 1982) (citations omitted).

In the present case, a Board member with pre-hearing knowledge regarding the allegations against Crump would neither necessarily nor presumptively be biased against him. "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." *Withrow v. Larkin*, 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728 (1975), *quoted in* 3 Davis, *Administrative Law Treatise 2d* § 19:4 at 384 (1980). Indeed, because of their multi-faceted roles as administrators, investigators and adjudicators, school boards are vested with a presumption that their actions are correct, and the burden is on a contestant to prove otherwise. N.C.G.S. § 115C-44 (1987); *see Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. 482, 497, 49 L. Ed. 2d 1, 11-12 (1976). The trial court correctly informed the jury of these concepts by instructing that:

> The North Carolina legislature has empowered local school boards to hear and decide teacher dismissal cases in this state. There is no other hearing panel designated in the law of North Carolina to hear teacher dismissal cases. The court instructs you that the law presumes that the school board members act with honesty and integrity. The law further presumes that actions taken by a school board of education [are] legally correct and that a board acts fairly, impartially and in good faith.

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

The burden is on the plaintiff to overcome this presumption by proving by the greater weight of the evidence that the board was impermissibly biased in dismissing the plaintiff.

III.

**[7]** If the Board in this case was biased, it was unable to provide Crump with the fair and open-minded consideration that due process demanded his case receive. "A public employee facing an administrative hearing is entitled to an impartial decision maker. . . . To make out a due process claim based on this theory, an employee must show that the decision-making board or individual possesses a disqualifying personal bias." *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 354, 342 S.E.2d 914, 924 (citing *Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. 482, 49 L. Ed. 2d 1 (1976), and *Salisbury v. Housing Authority of City of Newport*, 615 F.Supp. 1433, 1439-41 (E.D. Ky. 1985) ), *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986). Here, there was substantial evidence that, at the Board's hearing, one or more Board members consciously concealed both prior knowledge of the allegations against Crump and a fixed predisposition against him. Such evidence having been presented, the trial court properly submitted this case to the jury for its determination as to whether a Board member had in fact been biased against Crump.

A. *One Member Bias*

The decision of our Court of Appeals is in accord with the view of the United States Court of Appeals for the Third Circuit, which has stated that "[l]itigants are entitled to an impartial tribunal whether it consists of one [person] or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured." *Berkshire Employees Ass'n, Etc. v. National Labor R. Bd.*, 121 F.2d 235, 239 (3d Cir. 1941), *quoted in Crump v. Board of Education*, 93 N.C. App. 168, 185, 378 S.E.2d 32, 42 (1989). *Berkshire* involved an allegation by a knitting mill's employees' association that one member of the National Labor Relations Board had "endeavor[ed] to assist in a boycott on Berkshire's goods. This was at a time before he was called upon, in his capacity as a Board member, to pass upon the questions concerning unfair labor practices by Berkshire." *Berkshire*, 121 F.2d at 238-39. The court in *Berkshire* was addressing a situation analogous to the case at bar. We agree with that court's observations that:

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

It is perfectly clear that the exercise of its duties by an administrative body must necessarily proceed in a different fashion from the orthodox method of administering justice in courts. This administrative body must at times be successively or simultaneously investigator, complainant, prosecutor, trier of facts, declarer of law and administrator, all in the same matter. . . . The [courts] must be exceedingly careful not to jump to hasty conclusions that because the administrative process differs in many ways from the judicial process it lacks due process of law.

Nevertheless, if the administration of public affairs by administrative tribunals is to find its place within the present framework of our government it is essential that it proceed, on what may be termed its judicial side, without too violent a departure from what many generations of English-speaking people have come to regard as essential to fair play. One of these essentials is the resolution of contested questions by an impartial and disinterested tribunal. These adjectives are not absolute but relative as every thoughtful person knows. Decisions affecting human beings, made by human beings, necessarily are colored by the sum total of the thoughts and emotions of those responsible for the decision. The judicial process, or any other human process, cannot operate in a vacuum. The most we can hope for is that persons charged with responsibility for decisions affecting other people's lives and property will be as objective as humanly possible. . . . If the circumstances alleged are proved [then the plaintiff] did not have a hearing before an impartial tribunal, but one in which one member of the body which made exceedingly important findings of fact had already thrown his weight on the other side. . . .

The Board argues that at worst the evidence only shows that one member of the body making the adjudication was not in a position to judge impartially. We deem this answer insufficient. Litigants are entitled to an impartial tribunal whether it consists of one [person] or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.

*Id.*

A critical component of any quasi-judicial hearing and decision-making by a deliberative body is the give and take which occurs

when group members share their observations and opinions. There is a fundamental notion that each member will enter the hearing with an open mind, listen to and view the evidence, share his or her observations, analyses and opinions with the other board members, listen to the other members' comments, and *only then* finally commit to a vote. One biased member can skew the entire process by what he or she does, or does not do, during the hearing and deliberations. Since the Board's deliberations giving rise to this case were closed and unrecorded, there is no meaningful way to accurately review the process to determine the impact of any bias by one or more members during the hearing and deliberations.

B. *The Accardi Decisions*

One author has suggested that in its *Accardi* decisions, the Supreme Court of the United States has implicitly rejected a "one member bias" rule. 3 Davis, *Administrative Law Treatise 2d* § 19:4 at 387-88 (1980) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 98 L. Ed. 2d 681 (1954) (*Accardi I*), and its appeal on remand, *Shaughnessy v. Accardi*, 349 U.S. 280, 99 L. Ed. 2d 1074 (1955) (*Accardi II*)). We disagree with this interpretation of the *Accardi* decisions.

In *Accardi II*, an immigrant facing deportation alleged that the Board of Immigration Appeals had refused to suspend his deportation because the Board's decision was controlled by the Attorney General. *Accardi II*, 349 U.S at 281, 99 L. Ed. at 1076. The members of the Board were appointed by the Attorney General and served at his pleasure. *Accardi I*, 347 U.S. at 266, 98 L. Ed. at 686. Accardi claimed that the Attorney General had provided Board members with a list naming him as among several "unsavory characters" whom the Attorney General sought to deport. *Accardi II*, 349 U.S. at 281, 99 L. Ed. at 1076.

The Supreme Court, reversing a divided United States Court of Appeals for the Second Circuit, upheld the Board's decision. Noting that Accardi *was* a target of the Attorney General's deportation program — but that there was no such list of unsavory characters — the Supreme Court concluded that the evidence only showed that, at most, two members of the five-member Board knew that the Attorney General was targeting Accardi for deportation. *Id.* at 283, 99 L. Ed. at 1077. Although not discussed by the Supreme Court, we note that one or more Board member's mere *knowledge* that Accardi was being targeted for deportation would not rise

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

to the level of *bias* depriving Accardi of a fair hearing, as we have discussed previously. In *Accardi II* the Supreme Court noted, in reviewing the Second Circuit's decision, that "[t]he opinion of the [Court of Appeals] recognized that, before Accardi was entitled to another Board hearing, he had to prove that a majority of the Board not only knew of the 'list' but were affected by it." *Id.* at 282, 99 L. Ed. at 1077. The Supreme Court then went on to point out an unrelated error in the lower court's ruling, without either analyzing or approving the quoted language. We do not infer disapproval of the "one member bias" rule, which we conclude was properly applied in this case, based on that one sentence quotation from the Supreme Court's opinion. Since the evidence in *Accardi II* only tended to show mere knowledge on the part of one or more Board members, there was no evidence of actual bias by any Board member, and the Supreme Court was not called upon to evaluate a "one member bias" rule.

C. *Administrative and Judicial Distinctions*

There is some disagreement as to whether a school board's decision-making process in dismissing a teacher should be considered an "administrative" or a "judicial" function. Several courts, including the Supreme Court of the United States and our own Court of Appeals, have tended to indicate that school board decisions dismissing teachers for various actions may be administrative rather than judicial in nature. Our Court of Appeals has stated that:

> The procedures prescribed by G.S. 115-142 [now § 115C-325] for the dismissal of a career teacher are essentially administrative rather than judicial. . . . [T]he Board is not bound by the formal rules of evidence which would ordinarily obtain in a proceeding in a trial court. Nor are the Rules of Civil Procedure applicable. G.S. 1A-1. While a Board of Education conducting a hearing under G.S. 115-142 [now § 115C-325] must provide all essential elements of due process, it is permitted to operate under a more relaxed set of rules than is a court of law. Boards of Education, normally composed in large part of non-lawyers, are vested with "general control and supervision of all matters pertaining to the public schools in their respective administrative units," G.S. 115-35(b) [now § 115C-36], a responsibility differing greatly from that of a court. The carrying out of such a responsibility requires a wider latitude

in procedure and in the reception of evidence than is allowed a court.

*Baxter v. Poe*, 42 N.C. App. 404, 409, 257 S.E.2d 71, 74-75, *disc. rev. denied*, 298 N.C. 293, 259 S.E.2d 298 (1979); *see Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. 482, 495, 49 L. Ed. 2d 1, 11 (1976). We note, however, that the language quoted from our Court of Appeals in its *Baxter* decision addressed due process considerations relating to evidentiary issues not present in this case but, nevertheless, recognized that board of education hearings concerning dismissal of career teachers must meet the fundamental requirement of due process. *Baxter*, 42 N.C. App. at 409-410, 257 S.E.2d at 74-75.

On the other hand, there are decisions imposing *greater* judicial scrutiny upon administrative or quasi-judicial deliberative bodies.

[A] fair trial by an unbiased and non-partisan trier of the facts is of the essence of the adjudicatory process as well when the judging is done in an administrative proceeding by an administrative functionary as when it is done in a court by a judge. Indeed, if there is any difference, the rigidity of the requirement that the trier be impartial and unconcerned in the result applies more strictly to an administrative adjudication where many of the safeguards which have been thrown around court proceedings have, in the interest of expedition and a supposed administrative efficiency been relaxed.

*National Labor Relations Board v. Phelps*, 136 F.2d 562, 563 (5th Cir. 1943) (footnote omitted), *cited in Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984).

[8] We conclude that, whether termed administrative or quasi-judicial, the Board action in this case, involving resolution of disputed facts and selection among alternate sanctions, was required to afford Crump, at a minimum, an unbiased hearing in accord with principles of due process.

## IV.

This case on appeal is made more difficult because the *outcome* of the Board's hearing — Crump's dismissal — was upheld in a separate proceeding before the superior court and Court of Appeals in which Crump challenged the Board's action on the ground that the evidence at the Board's hearing did not support its findings. *Crump v. Board*

*of Education*, 79 N.C. App. 372, 339 S.E.2d 483, *disc. rev. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). Therefore, the issue of whether the Board's findings and conclusions supported its decision to dismiss Crump is not before us; his dismissal is final, and may not be reviewed as a part of this appeal. Instead, we review in this appeal only Crump's separate civil action seeking money damages under 42 U.S.C. § 1983 for injury arising from a violation of his due process rights, resulting from his being forced to endure an unfair hearing *process*, no matter what the outcome of the Board's hearing.

A. *The Outcome of the Board Hearing*

[9]   The appellants, the amicus, and one dissent in this Court each make the fundamental error of assuming that the finality of the Board's decision to dismiss Crump is determinative on the question of whether the hearing *process* itself was fundamentally unfair and resulted in injury to him. The appellants argue that the trial court's instructions in this separate § 1983 civil action, affirmed by the Court of Appeals, created a conclusive presumption that one Board member's bias spread to a sufficient number of other members to have determined the result against Crump. That characterization is incorrect in that it focuses on the *result* reached at the hearing, which is not determinative on the question of whether the Board's *procedure* was unfair and, thus, denied Crump due process. Likewise, whether one member's bias *spread* is not determinative; one Board member's fixed bias is sufficient to cause the hearing *process* to deny due process, even though the hearing result itself can be justified.

[10]   Here, damages were assessed solely for the due process violation and resulting injury arising from Crump being forced to endure a hearing before a deliberative body which a Catawba County jury found had contained one or more members who had already decided the case against him. Damages were *not* assessed for the removal of Crump from his job. The purpose of 42 U.S.C. § 1983 would be defeated if a defendant could raise as a bar to recovery the fact that, regardless of a due process deprivation, the outcome of the process in which the due process deprivation occurred was nonetheless justifiable. Such reasoning smacks of the end justifying the means. No matter how many valid reasons the Board may have uncovered for dismissing Crump, the Board was obligated to provide him a fair hearing. A Catawba County jury determined from the evidence at trial that one or more Board members were

biased against Crump at the hearing. The jury was thus justified in returning the verdict it in fact returned, finding that the Board's hearing denied Crump due process and awarding damages accordingly.

B. *The Remedy Now Sought*

The defendants also argue that Crump's relief, if any, must be limited to a remand of this case for a determination of whether a member of the Board was disqualified because of bias, and, if so, for a new hearing by Board members not so disqualified. The defendants and one dissent in this Court seem to think that an incorrect dismissal of Crump was the only possible harm that could have flowed to him from the due process violation found by the jury to have occurred. That view ignores the very real injury to both Crump and our society from allowing him to be forced to defend himself in a hearing which denied him due process, whether he was guilty of the allegations against him or not. "It is fundamental that both unfairness and the appearance of unfairness should be avoided." *American Cyanamid Company v. F.T.C.*, 363 F.2d 757, 767 (6th Cir. 1966); *see State v. Mettrick*, 305 N.C. 383, 385, 289 S.E.2d 354, 356 (1982). Damages awardable under a 42 U.S.C. § 1983 action include mental and emotional distress caused by *the due process violation itself. Carey v. Piphus*, 435 U.S. 247, 262-64, 55 L. Ed. 2d 252, 264-65 (1978), *cited in Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 781 (9th Cir. 1982).

[11] The defendants and amicus correctly note that in order to recover more than nominal damages on his § 1983 due process claim, Crump must have been injured by the due process violation itself, and not merely by distress caused by a deprivation of his constitutionally-protected interest in his job. *See, e.g., Carey v. Piphus*, 435 U.S. at 263-64, 55 L. Ed. 2d at 264-65; *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 353, 342 S.E.2d 914, 924, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986). Crump's complaint in this § 1983 civil action—heard separately from the direct review of his dismissal, as a result of *the defendants'* successful effort to separate the two actions—alleged injury *only* from the Board's action subjecting him to a hearing where he was denied due process; he did not seek damages for the Board's action in dismissing him. The evidence of damages in this case was correctly limited by the trial court to evidence tending to show the suffering Crump sustained as a result of the denial of due process *at the*

*hearing*. The jury was not allowed to consider whether the Board was justified in dismissing Crump; *the defendants'* earlier successful effort to sever had removed that issue from this case. The jury did know, at the defendant Board's request, that Crump had been dismissed and that the dismissal had been upheld. Having established injury arising from the due process violation itself to a Catawba County jury's satisfaction, Crump was entitled to a verdict in his favor.

V.

Bias is hard to prove. Given the level of pre-commitment by a board member that must be shown to make out a case of bias and a resulting denial of due process, we doubt that our decision in this case will open any floodgates of litigation or unduly prevent boards of education from dismissing bad teachers. Determining what procedure is required by principles of due process in a given situation requires that the cost of the procedure be evaluated in light of the potential harm flowing from that procedure. In this case, the cost of the procedure which we conclude due process required was whatever it would have taken for one or more Board members to candidly answer Crump's questions about their pre-hearing knowledge. The injury to Crump from being forced to participate in a hearing that the jury in this case determined was unfair, on the other hand, was valued by the Catawba County jury at $78,000. It should not cost that much to be candid; talk is cheap.

[12] The Court of Appeals affirmed the judgment of the trial court awarding Crump $78,000 in compensatory damages. We note, however, that the trial court's judgment in this case indicated that those damages were to be recovered from the "defendants," but indicated that the "defendant" was to pay the costs. By his complaint, the plaintiff sought compensatory damages only from the defendant Board, and not from the individual defendants. The plaintiff sought only punitive damages from the individual defendants. The jury having returned its verdict awarding only compensatory damages, but no punitive damages, the trial court's judgment should have ordered that the damages and costs be recovered only from the defendant Board and not from the other defendants individually. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Catawba County, with instructions that the judgment be modified and amended

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

accordingly. Except as modified in this regard, the decision of the Court of Appeals affirming the judgment of the trial court is affirmed.

Modified and affirmed; remanded with instructions.

Justice MEYER dissenting.

The majority finds it perfectly logical that a teacher rightfully discharged for molesting high school girls who were his students should recover $78,000 from the school board for a lack of due process in the hearing that resulted in his rightful discharge. I do not. First, because the issue—bias of a member of the board that discharged him—was not properly before this Court, it having been disposed of in the discharge case; and, second, because the new rule adopted here by the majority—"one member biased"—is fundamentally unsound. This new rule produces a bizarre result in this case, and it will continue to produce bizarre results in the future.

The findings of fact of the school board in this matter included the following:

4. By letter dated June 4, 1984, the Superintendent submitted to the Board his recommendation for the dismissal of Eddie Ray Crump as a teacher in the Hickory Administrative School Unit on the following grounds: immorality, neglect of duty, failure to fulfill the duties and responsibilities imposed upon teachers by the General Statutes of North Carolina, and insubordination.

5. On or about April 6, 1981, while instructing Elizabeth Davis, a female high school student over whom he had authority for the purpose of driver education instruction, Eddie Ray Crump asked her questions, to wit: Do you play the field? Are you getting a new bathingsuit [sic] this summer or are you going to go skinny dipping? On the same occasion, Eddie Ray Crump used the word "crotch" and pointed to her private parts and touched her unnecessarily and intentionally on the top of her thigh and played with her hair. As a result of these actions, the student became scared of the teacher, Eddie Ray Crump.

6. As a result of the incident on April 6, 1981, a complaint was filed with the Principal of the High School, and Elizabeth

Davis was removed from Eddie Ray Crump's instruction and placed with another driver education instructor.

7. On April 9, 1981, as a result of the incident with Elizabeth Davis on April 6, 1981, Eddie Ray Crump was instructed in writing by the Principal of the High School that "there shall be a third person in the car during the road work phase of the driver education of female students" and the "failure to cooperate with these instructions could be interpreted as insubordination."

8. On April 2, 1982, the suggestion was made to Eddie Ray Crump by the Principal of the High School on his 1981-82 Teacher's Performance Appraisal Instrument that he "must make an effort to follow established rules and guidelines."

9. During the summer of 1982, while instructing Ursula "Hope" Bolick, a female high school student in driver education, the teacher, Eddie Ray Crump, grabbed her leg unnecessarily. The incident occurred while the two were in the driver education vehicle alone, in contravention of the Principal's instructions to the teacher. The teacher also drove with Ursula Bolick alone during driver training on two other occasions.

10. In the fall of 1983, while instructing Donna Bumgardner Yoder, who was a female student at Hickory High School, the teacher, Eddie Ray Crump, on two occasions reached across the seat to adjust a yellow cushion behind her back and accidentally touched her neck. The teacher also, during driver training, called her "Honey," although the Board found this not offensive under the circumstances.

11. During the fall of 1983, while instructing Nina Winkler, a female high school student in driver education, Eddie Ray Crump intentionally and unnecessarily put his hand under her right breast two or three times, touching her breast. As a result of this action on the part of the teacher, the student became scared to go back in the car with Mr. Crump and has not returned to driver education since the occurrence. The teacher, Eddie Ray Crump, also used the words "Goddamn" and "damn" during the instruction of the student.

12. On one or more occasions, Eddie Ray Crump instructed the following female students during the times specified, in the road work phase of their driver education while no third

person was in the vehicle. These acts were in disobedience of the Principal's instructions, were knowingly and wilfully done and were admitted by the teacher, Eddie Ray Crump.

a. Ursula "Hope" Bolick in the summer of 1982,

b. Sheree Raker in the fall of 1983.

Based on these findings, the school board made, *inter alia*, the following pertinent conclusions of law:

7. The behavior of the teacher, Eddie Ray Crump, in touching Nina Winkler's breast on two or three occasions; in unnecessarily and intentionally grabbing Ursula Bolick's leg; in asking Elizabeth Davis personal questions which had sexual overtones or innuendoes, referring to her "crotch," touching the top of her thigh and playing with her hair, are offensive to the morals of the community, a bad example to the youth whose ideals a teacher is supposed to foster and elevate, and constitute immorality under the provisions of N. C. Gen. Stat. § 115C-325(e)(1)(b).

8. The actions of Eddie Ray Crump in providing instruction to two female students in the road work phase of their driver education vehicle while no third person was in the vehicle has been admitted by the teacher and was done in disregard of the express written directions of his Principal. This was a wilful refusal by the teacher, Eddie Ray Crump, to obey the reasonable directions of his Principal and constitute insubordination under the provisions of N. C. Gen. Stat. § 115C-325(e)(1)(c).

Based, *inter alia*, upon these findings and conclusions, the school board discharged Mr. Crump as a high school teacher.

As the majority recognizes, the complaint filed in this action by Mr. Crump was such that alleged within one pleading were two actions. The two causes of action were pending simultaneously, the first being an appeal of an administrative hearing which resulted in his discharge from employment, and the other being a section 1983 civil rights action for compensatory monetary damages against the school board and punitive damages against its members individually. The cases were severed, and as the majority has indicated, the judicial review of the board's decision to discharge

Mr. Crump on the basis of immorality and insubordination proceeded separately.

Mr. Crump argued in the prior discharge case that the school board was biased. In his petition for judicial review of his discharge, he alleged, *inter alia*, "that the action of the Board of Education in dismissing the plaintiff was biased." Judge Claude Sitton directly addressed that issue in his judgment in the discharge case. The order states: "The court further finds and concludes that the action of the Board to dismiss Crump was not biased . . . but instead was based on substantial evidence viewing the record as a whole." Thus, Judge Sitton's order directly addressed and disposed of Mr. Crump's allegation of bias.

Mr. Crump excepted to this particular finding and conclusion. In his entry of appeal filed with the Court of Appeals, Mr. Crump assigned as the first error that there was not substantial evidence in the whole record to support "the Superior Court's Findings and Conclusions that the findings, inferences and conclusions of the Board of Education . . . are not biased." Thus, this issue was before the Court of Appeals in *Crump I.*

As it turned out, the plaintiff neglected to brief this assignment. Assignments of error not briefed are deemed abandoned on appeal. N.C.R. App. P. 28 (1990).

The Court of Appeals affirmed the judgment of the trial court, and we denied a petition for a writ of certiorari to review that decision. Thus, the courts of North Carolina have determined, with finality, as the majority concedes, that the plaintiff was rightly discharged. It is also apparent that the issue of school board bias has been decided and disposed of conclusively.

In the section 1983 action now before us, the school board contended that the plaintiff's due process claim was precluded by Judge Sitton's disposition of the previous case. Judge Robert Gaines denied the defendants' summary judgment motion on the basis that the plaintiff's due process claim was not foreclosed by the resolution of the other case. It is inescapable that Judge Gaines erred in this regard. The bias issue had indeed been precluded by the order of Judge Sitton resolving the other case, which order was affirmed by the Court of Appeals and on which this Court denied discretionary review. It is my view, therefore, that the issue of bias by one or more members of the school board is not

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

properly before this Court. It was precluded by the determination of that very issue between these very same parties, on these very same pleadings, in the case in which plaintiff's discharge was judicially reviewed and upheld. The proper forum to have addressed any unfairness in the hearing was in the action in which it was raised, litigated, and decided—the discharge action—not in this action for an after-the-fact award of money damages.

The failure to recognize the procedural bar has led the majority to the strange position of allowing Mr. Crump to recover $78,000 in damages for a due process violation occurring in the hearing that it acknowledges resulted in his rightful discharge, uninfluenced by board member bias. A teacher who has been found to be guilty of the charges made against him, which charges were serious enough to justify dismissal, and whose discharge has been judicially affirmed on appeal, now reaps the benefits of a $78,000 jury verdict.

How the majority can conclude that there have been damages to Mr. Crump sufficient to support a $78,000 jury verdict mystifies me. Deprivation of Mr. Crump's interest in his continued employment, and such reputation as was inseparably intertwined with his interest in continued employment, formed the sole basis for his allegations of a due process violation. But there is no dispute that the board properly discharged Mr. Crump upon substantial evidence in the record and without bias. Where the deprivation of an interest is proper, there can be no allowable damages arising from that deprivation, for no damages in fact can be caused by a proper deprivation. See, e.g., Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 286, 50 L. Ed. 2d 471, 483 (1977) ("it [is] necessary to . . . distinguish[] between a result caused by a constitutional violation and one not so caused").

Without doubt, if the procedure used to discharge a career teacher violates due process, then a discharge decision caused by the invalid procedure would itself be invalid. Conversely, if a discharge is finally determined on appeal to be valid, then it must follow that the process underlying that decision caused no harm. The majority opinion today stands for the deviate proposition that a procedure impermissibly deprived plaintiff of protected interests valued at $78,000 but that ultimate deprivation of those same interests by that same invalid procedure was proper, as finally determined on appeal. This position violates all standards of legal reason.

## CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

The majority recognizes that the plaintiff in this action did not seek compensatory damages from the individual members of the board, and its decision limits recovery of compensatory damages to the school board as an entity. Since the jury returned no punitive damages against the individuals, the individuals suffer no pecuniary liability in this case. I am concerned, however, that the majority opinion presumably would allow recovery of compensatory damages against all individual board members when properly pled and when the bias of any single member is proven. Like Judge Wells below, I find this "one-member bias" rule creates bizarre results.

In a situation where only one board member is biased and does not reveal his bias to plaintiff at the hearing, the other board members may be as ignorant of that member's bias as is plaintiff. It is not fair to subject these innocent board members to individual liability on a monetary judgment, much less the damage to their individual reputations, based upon the unrevealed, personal opinions of a fellow member. In a due process case such as the case before us, where the controlling principle is fundamental fairness, it is ironic that innocent, volunteer, uncompensated public servants performing a civic duty can be subjected to group liability and public embarrassment or humiliation for the bias of one of their number. Under the majority opinion, this financial obligation may be to a teacher who was guilty of the serious charges made against him and who would have been dismissed even without the participation of the biased member in the decision-making process. Thus, under the trial court's interpretation of the law, the individual members of the board may be exposed to joint and several liability without total, or even majority, guilt. That concept is fundamentally unfair and could have a marked chilling effect on the participation of citizens on these elected, uncompensated boards.

The "one-member bias" rule of the majority could, and no doubt will, adversely affect the willingness of boards of education to dismiss bad teachers. Every citizen who serves on a local board of education faces a dilemma. Every board member doing his or her job will surely know about teacher misconduct, particularly in the especially egregious cases. He or she knows that he will be called upon to decide dismissal cases, as he is a member of the only entity empowered to dismiss teachers. Yet, by doing his or her duty, the board member becomes subject to the threat of lawsuits and individual liability for monetary awards.

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

Moreover, a board member may want to recuse himself or herself simply out of fear that someone else on the board has formed a bias and has not disclosed it. Though he may feel comfortable hearing the case himself, the member risks the public humiliation of being found to have deprived someone of his civil rights if even one of his fellow board members is biased. Board members will be disinclined to continue their services.

Furthermore, the majority rule creates a disincentive to board action against a bad teacher. A teacher whose conduct is unquestionably harmful to children may escape discharge or even discipline for his misconduct out of fear of subsequent bias claims. No school board member can take comfort in the fact that a jury might agree with him that he made the right decision when he chose to fire the teacher. The majority rule prevents the board from presenting the evidence that the board member heard to the jury. At the very best, the majority's open invitation for rightfully discharged teachers to bring bias claims against school boards will place a financial burden on school boards, consuming significant public resources in defending such cases even when the school boards prevail.

In adopting the one-member bias rule, the majority relies upon the United States Third Circuit Court case of *Berkshire Employees Ass'n v. NLRB*, 121 F.2d 3235 (3rd Cir. 1941). Assuming, without conceding, that *Berkshire* was correctly decided, it is easily distinguishable from the case at bar. The relief afforded in *Berkshire* was simply a new hearing. Ironically, this hearing was to be conducted by the remaining commission members who had previously heard the case and were theoretically subject to the tainting influence of the biased board member. The same is true of each of the three cases relied upon by the majority panel of the Court of Appeals in reaching its decision on this same issue.

In a case such as *Berkshire* where plaintiff is only seeking the remedy of a new hearing, a one-member bias rule might be appropriate. In such an instance, the finding of guilt or innocence of the underlying charges is irrelevant—the new hearing will determine that issue. Where, as here, monetary damage is the subject of the action brought by a rightfully discharged teacher, a more restrictive rule is called for. The permanent relief of money damages should be determined only after resolving the difficult issue of whether there was bias and, if so, determining whether that bias

## CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

affected the result—that is, whether the plaintiff would not have been dismissed absent that bias. Under the majority opinion, a jury may find liability against the board and its members individually if only a single member was biased; if that bias was unknown to the other members; and without regard to the impact, if any, of that bias on the board's final decision.

The commonly held notion that juries will generally reach a proper result cannot be relied upon in this type of case. The jury is not allowed to hear the evidence considered by the board against the person charged, it may not consider whether the dismissal was justified, nor may it even hear the board's findings of fact and conclusions to aid it in determining whether the discharge was based upon adequate findings or upon the board's bias.

I cannot presume that the members of a school board were incapable of fairly deciding this solely by virtue of their association with a board member who was allegedly biased. It is completely unnecessary to do so in order to assure that justice is done. We do not even *presume* bias on the part of jurors in serious criminal cases. The United States Supreme Court has held that, when the facts of a particular case give rise to a risk of juror bias, the juror is not presumed to be biased, and the defendant is given an opportunity at a hearing to establish actual bias of the juror. *Smith v. Phillips*, 455 U.S. 209, 71 L. Ed. 2d 78 (1982).

Solid authority from a number of other states holds that the presence and vote of a biased member does not invalidate a result if the required majority exists without reference to the disqualified vote. The general rule applied in these cases has been stated as follows:

> It has generally been held that the vote of a council or board member who is disqualified because of interest or bias in regard to the subject matter being considered may not be counted in determining the necessary majority for valid action. . . . It is also the rule that where the required majority exists without the vote of the disqualified member, his presence and vote will not invalidate the result . . . .

*Anderson v. City of Parsons*, 209 Kan. 337, 342, 496 P.2d 1333, 1337 (1972); *accord Vanelli v. Reynolds School Dist.*, 667 F.2d 773, 780 n.13 (9th Cir. 1982); *Murach v. Planning & Zoning Com'n*, 196 Conn. 192, 203, 491 A.2d 1058, 1065-66 (1985) (quoting 56 Am.

Jur. 2d *Municipal Corporations* § 172, at 225 (1971) ); *Board of Comrs. v. Thompson*, 216 Ga. 348, 349, 116 S.E.2d 737, 738 (1960); *see also* Annot., "What constitutes requisite majority of members of municipal council voting on issue," 43 A.L.R.2d 698, 751 § 27[b] (1955) ("[g]enerally, . . . where the required majority exists without the vote of a disqualified member, his presence and vote will not invalidate the result"). Admittedly, these cases do not deal with the dismissals of teachers specifically, but then, neither does the *Berkshire* line of cases relied on by the majority. These authorities do, however, stand for the proposition that if the biased member's presence is not required for a quorum and if his vote was not necessary to form a majority, the board action remains valid and damages should not be awarded.

I believe that the court should utilize a sequence of shifting burdens to govern bias suits. Through this process, the judicial review of the party's discharge and his section 1983 claim for damages could be disposed of in a single action. The process begins with the presumption that the action of the board is correct. N.C.G.S. § 115C-44(b) (1987). The initial burden is on the plaintiff (the party charging bias) to demonstrate that one or more members of the board possessed a disqualifying personal bias. Upon a presentation of specific facts demonstrating a disqualifying personal bias, the presumption is rebutted, and the burden shifts to the board to demonstrate that the bias did not affect the outcome. The board discharges this burden by demonstrating either that no board member was actually biased or that, after eliminating the votes of the biased board members as well as the votes of the board members whose votes were influenced by the biased members, there remains a sufficient number of untainted, affirmative votes to sustain the action. If the board discharges this burden, the due process claim fails, and the party would not be entitled to a new hearing and may not collect damages from the board.

Under this sequence of shifting burdens, the court should direct a verdict dismissing the due process claim if (1) the party, as a matter of law, fails to discharge its initial burden of rebutting the board member's presumption of honesty and integrity; or (2) the board, as a matter of law, discharges its burden of demonstrating that the bias did not affect the outcome. If the claim survives the directed verdict stage, then the court should instruct the jury in accordance with the above-described sequence of shifting burdens.

## CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

The United States Supreme Court has endorsed this sequence of shifting burdens to resolve claimed constitutional violations. In *Mt. Healthy City Bd. of Educ. v. Doyle*, a teacher contended that his nonrenewal was in retaliation for the exercise of his first amendment rights to free speech. The Court delineated the following procedure for resolving the case:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was . . . a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the district court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Mt. Healthy*, 429 U.S. at 287, 50 L. Ed. 2d at 484. The Court ultimately remanded the case to the trial court to determine if the board satisfied its burden.

Relying on *Mt. Healthy*, a federal claims court in *Salisbury v. Housing Authority of Newport*, 615 F. Supp. 1433, 1444 (E.D. Ky. 1985), applied the sequence of shifting burdens to a due process claim of bias. *See Kendall v. Board of Education of Memphis City*, 627 F.2d 1, 6, n.6 (6th Cir. 1980) (shifting burdens applicable to due process claim). The court in *Salisbury* held that, despite the dismissed employee's showing that the tribunal was biased, her due process claim would fail if the housing authority demonstrated that "she would have been terminated if the hearing had been held before an impartial decisionmaker." *Salisbury v. Housing Authority of Newport*, 615 F. Supp. at 1444. The court ultimately referred the case to a United States magistrate to act as special master to determine whether the employee was entitled to recover damages.

*Mt. Healthy* delineated the general rule in favor of such a sequence of shifting burdens, and *Salisbury* applied the sequence to due process claims of bias. This Court has employed a sequence of shifting burdens in both criminal and civil matters. *See State v. Cofield*, 324 N.C. 452, 379 S.E.2d 834 (1989); *Pickerell v. Trucking Co.*, 322 N.C. 363, 370, 368 S.E.2d 582, 586 (1988).

I vote to reverse the Court of Appeals.

Justice MARTIN dissenting.

I respectfully dissent from the majority opinion for the reason that the issue of bias upon which the jury verdict in the section 1983 claim was bottomed had previously been resolved against the plaintiff in the trial and appeal of the administrative review claim reported in 79 N.C. App. 372, 339 S.E.2d 483, *disc. rev. denied* (1986). This prior determination of the issue of the bias of the Board became the law of the case and is conclusive on the bias issue raised in the section 1983 claim for damages. Therefore, the section 1983 claim should have been disposed of by summary judgment in favor of the defendants.

Plaintiff, in his complaint, alleged:

9. Plaintiff complains of and excepts to the order of the Board of Education dismissing him as a teacher and makes the following allegations and assignments of error:

a. That the action of the Board of Education in dismissing plaintiff was biased, arbitrary and capricious, lacking substantial basis in fact and being substantially disproportionate to the offense, thus denying to plaintiff both the protections of the Tenure Act and of the Due Process provision of the US and NC Constitutions.

. . . .

g. That members of the Board of Education were biased on their consideration of the issues, had determined beforehand what action they would take at the hearing, and did not afford plaintiff-petitioner the fair and non-prejudicial hearing to which he was entitled.

The bias issue was clearly presented at the hearing before the Board of Education. The transcript of that hearing discloses:

MR. FULLER: I would appreciate that. Secondly, I was going to say this anyway, but certainly in light of the fact that there has been some, I want to be perfectly blunt about it and ask the board to the extent of which any of you have been personally involved, have discussed with people who have knowledge and whether any of you have formed any kind of preconceived notions. I don't mean that in a pejorative sense but just as a matter of being brutally candid. Has anybody on the board either because of the publicity because of what

you have heard from administration, from friends, neighbors, from anyone else, whether you have any problem at all being completely fair to Mr. Crump? And again I don't mean fair in the sense of you will try to be fair, but can you honestly say the scales are even now? I follow that a half step by adding particularly when you consider that you have got the individual teacher on the one hand and the chief personnel officer on the other, and yet the constitution requires that he have a fair and impartial tribunal or hearing body. And so I don't want to offend anybody—

MR. PITTS: That's a fair question. I am glad you addressed that right up front because several months ago the board was aware that some form of hearing was coming down the pike. The administration, the attorney, has not ever revealed anything until we received this letter in the mail yesterday hand delivered of any charges or any statements. Now, I can speak for myself. But the attorney has asked all members of the board not to discuss any aspect of anything that they may hear.

If someone calls them on the phone, they are not to respond in any way. I can speak for myself to say that for me at this point in time the slate is clear. And I will ask Mrs. Newton the same question.

MRS. NEWTON: The same thing. In fact we have not even been given a name whenever we were told a hearing was coming up. And I have not been approached by anybody. And if mention was made of it, I just said I know nothing. And whatever judgment would be made has to be done on what we hear tonight.

MR. ISENHOUR: The same.

MR. PITTS: Mrs. Garlitz.

MRS. GARLITZ: The same. I have had people that made statements to me, and I have not responded in any way. And I did not know until the letter came yesterday what this was about.

MR. PITTS: Mr. Watts.

MR. WATTS: Frankly I feel that I can be as objective as anybody on this board. Obviously when a newspaper that

is published on a county-wide basis comes out and indicates that a teacher is being brought up for charges, I read the article because I'm on the school board and the teacher happens to be in my system.

Other than that, there has been no preliminary information except for this notice we got yesterday afternoon late in the afternoon with the charges. I think I have a fairly good grasp of what we're here for and hopefully will be able to give every bit of the evidence full weight.

MR. PITTS: Mrs. Young.

MRS. YOUNG: I had one call, and I said, "I have no comments." And I have not said one word anywhere. And when I go, I listen and I vote my convictions.

The decision of the Board of Education contained the following conclusion:

6. All procedural steps required under NC Gen Stat § 115C-325 have been properly followed, and all due process rights required thereunder have been accorded to Eddie Ray Crump.

The defendants in their answer and motion for judgment on the pleadings make the following allegation:

2. The issues raised by the Plaintiff involve alleged bias or prejudgment of the issues involved by the Board and its members.

Upon the hearing in the superior court in November 1984, judgment was entered containing the following:

The court further finds and concludes that the action or [sic] the Board to dismiss Crump was not biased, arbitrary or capricious; was not substantially disproportionate to the offenses proved; but instead was based on substantial evidence viewing the record as a whole.

To this judgment the plaintiff made two assignments of error. The first assignment contained two arguments: that the court erred in concluding that the Board's findings were supported by substantial evidence and, secondly, that the court erred in concluding that the Board's order was not biased and capricious.

CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

In the plaintiff's brief filed with the Court of Appeals on 3 June 1985, the plaintiff only argued that the decision of the Board of Education to terminate Mr. Crump was not supported by substantial evidence in the light of the whole record. Plaintiff did not argue before the Court of Appeals that the Board of Education was biased and had prejudged his case and that the decision by the Board was biased and arbitrary and capricious.

The opinion of the Court of Appeals, 18 February 1986, only discusses the plaintiff's contention that the Board's findings and conclusions were not supported by substantial evidence in the whole record. The Court of Appeals made no decision with respect to the plaintiff's other contention that the Board of Education was biased. This Court denied plaintiff's petition for discretionary review of the Court of Appeals' decision.

Plaintiff, by his failure to bring forward in his brief before the Court of Appeals the issue of bias on the part of the Board, has abandoned this issue, and the same has been determined against him by the judgment of the superior court. "Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." Rule 28(a), Rules of Appellate Procedure; *State v. Wilson*, 289 N.C. 531, 223 S.E.2d 311 (1976). Thus, it was judicially determined in this proceeding that the Board of Education was not biased and that its decision was not based upon bias nor was it capricious. This became the law of the case in this lawsuit and was binding upon the parties in the trial of the section 1983 issues arising on plaintiff's complaint. It is to be remembered that plaintiff's complaint raised both issues—the propriety of his dismissal in the administrative hearing and the action for damages under section 1983. The trial of the issues was separated by the trial judge upon motion of the defendant and no objection or issue to that discretionary decision of the trial court has been raised by the plaintiff. Therefore, the prior decision in the administrative hearing aspect of this case and the appeal therefrom became the law of the case with respect to the question of whether the Board was biased in deciding plaintiff's claim and whether its decision was based upon bias or was capricious. This prior determination as to the bias issue was binding and conclusive upon the parties and the court in the section 1983 aspect of this case. *Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 210 S.E.2d 181 (1974); *Bank v. Barbee*, 260 N.C. 106, 131 S.E.2d 666 (1963); *Furniture Co. v.*

*Herman*, 258 N.C. 733, 129 S.E.2d 471 (1963); *Duffer v. Dodge, Inc.*, 51 N.C. App. 129, 275 S.E.2d 206 (1981); *Carpenter v. Carpenter*, 25 N.C. App. 235, 212 S.E.2d 911 (1975).

Turning now to the case before us, the Court of Appeals in its opinion apparently overlooked the fact that the plaintiff had brought forward an assignment of error in the previous appeal on this case on the issue of bias on the part of the Board, but abandoned that issue by failing to bring the issue forward and argue it in his brief before the Court of Appeals. I find that the question of whether the issue of bias should have been submitted to the jury is well within the issue raised by the dissent in the Court of Appeals. The whole question before that court was the appropriateness of the submission of that issue and the correctness of the trial judge's instructions thereto. In any event where justice and right are concerned, this Court has never allowed manifest injustice to prevail based upon some procedural technicality in a trial or appeal. *See State v. Black*, 308 N.C. 736, 744, 303 S.E.2d 804, 809 (1983) (Martin, J. concurring). It is clear in this case, in my opinion, that the issue of bias has been resolved on the merits against the plaintiff and that this decision is the law of this case and is binding upon this Court in the subsequent appeal of the same issue in plaintiff's section 1983 claim. Plaintiff had a remedy to review the trial court's ruling against him in the bias issue. He could have raised it in his first appeal to the Court of Appeals in this case. Plaintiff's failure to preserve the bias issue cannot thereafter be transformed into a sword to visit manifest injustice upon these defendants in the section 1983 claim. Once the bias issue was fairly and finally decided between these parties, this Court should not allow plaintiff to relitigate the issue in another prong of the identical lawsuit and thereby frustrate the due administration of justice.

Upon this theory, I conclude that it is inappropriate for this Court to decide the substantive legal issue that it has undertaken to do in the majority opinion. I would reverse the decision of the Court of Appeals upon the basis that the bias issue has already been determined on the merits against the plaintiff in this case and that he may not relitigate the same in this section 1983 aspect of his lawsuit.

## CRUMP v. BD. OF EDUCATION

[326 N.C. 603 (1990)]

Justice WHICHARD dissenting.

I concur, essentially, in Justice Martin's dissenting opinion and in the "issue preclusion" portion of Justice Meyer's dissenting opinion. I write separately because I would rely upon somewhat different reasoning and authorities.

A single, identical issue arising from the same circumstances has been decided twice—once by a judge, and once by a jury—contradictorily. As both dissents and the majority recognize, plaintiff twice alleged in his 9 July 1984 complaint and petition for judicial review of the Board hearing that the Board's consideration of his case and its action dismissing him were affected by bias:

> [T]he action of the Board of Education in dismissing plaintiff was biased, arbitrary and capricious, lacking substantial basis in fact and being substantially disproportionate to the offense, thus denying to plaintiff both the protections of the Tenure Act and of the Due Process provision of the U.S. and N.C. Constitutions. . . .

> [M]embers of the Board of Education were biased on their consideration of the issues, had determined beforehand what action they would take at the hearing, and did not afford plaintiff-petitioner the fair and non-prejudicial hearing to which he was entitled.

An amended complaint and petition for judicial review, filed 14 August 1984, reiterated these allegations.

The record includes defendants' 4 September 1984 motion to separate plaintiff's appeal of the Board's administrative action from his complaint alleging violations of his constitutional rights. Among the reasons cited by defendants in support of separation was that proceeding with both actions concurrently "would be . . . prejudicial in that a determination of the appeal will decide the issues raised in the civil action. A prior determination of the appeal is necessary to a proper disposition of the civil action." There is no indication in the record of the trial court's ruling on this motion, but the Court of Appeals, the majority, and one dissent all note a subsequent, *de facto* severance. *See Crump v. Board of Education*, 93 N.C. App. 168, 177, 378 S.E.2d 32, 37 (1989).

The only trial court ruling of record is a judgment filed 29 November 1984 in which the trial court indicated that it had applied

the "whole record test" and had considered "all matters submitted by both sides." The trial court found and concluded not only that the Board's decision had been "supported by competent, material, and substantial evidence in view of the entire record as submitted" and had "a rational basis in the evidence," but also that "the action of the Board to dismiss Mr. Crump was not biased, arbitrary or capricious."

Plaintiff excepted separately to each of these findings and conclusions. His first assignment of error cited these two exceptions and stated:

> The Superior Court's Findings and Conclusions that the findings, inferences and conclusions of the Board of Education are supported by substantial evidence and are not *biased* and capricious or substantially disproportionate to the offenses proved on the grounds that there is not substantial evidence in the whole record to support these Findings and Conclusions. (Emphasis added.)

Despite the opacity of its syntax, this assignment of error clearly includes the issue of bias within its statement of the issue whether substantial evidence underlay the Board's action. Nevertheless, in his brief to the Court of Appeals plaintiff did not mention bias at all, but rested his argument chiefly upon the trial court's failure to apply the proper standard of review to the evidence. Defendants' brief denied the inference that plaintiff had been "railroaded," but made no other allusion to the issue of bias. Accordingly, the opinion of the Court of Appeals did not address the issue of Board bias. *See Crump v. Board of Education*, 79 N.C. App. 372, 339 S.E.2d 483, *disc. rev. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986).

Plaintiff's § 1983 action proceeded to trial in 1987 and culminated in a jury's verdict that defendants had failed to provide plaintiff a fair hearing before an unbiased hearing body and in an award of compensatory damages. This action is now before us on appeal.

Of the two issues addressed by the majority, in my opinion only one is necessary to the disposition of this case: whether plaintiff's separate § 1983 action was precluded by the "companion principle" of *res judicata*, collateral estoppel by judgment. *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973). This principle bars parties from retrying fully litigated issues that were necessary to and have been decided in any prior determination. *Id.*

*Res judicata*, or "claim preclusion," bars absolutely subsequent action upon the same "claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 427, 349 S.E.2d 552, 556 (1986) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L. Ed. 195, 197 (1877) ). *See also State v. Lewis*, 63 N.C. App. 98, 102, 303 S.E.2d 627, 630 (1983), *aff'd*, 311 N.C. 727, 319 S.E.2d 145 (1984). In collateral estoppel by judgment, or "issue preclusion," "the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. at 427, 349 S.E.2d at 556 (quoting *Cromwell v. County of Sac*, 94 U.S. at 353, 24 L. Ed. at 198). Collateral estoppel applies only where the parties are identical or in privity in the former and the latter actions and where the issues are the same. Although in this case the first requisite is plainly met, the second requisite requires a scrutiny of the record to determine not only that the issues are identical, but also that the issues were actually raised and litigated in the prior action, that they were material and relevant to the disposition of the prior action, and that the determination of those issues in the prior action was necessary and essential to the resulting judgment. *King v. Grindstaff*, 284 N.C. at 358, 200 S.E.2d at 805-06.

The issue of Board bias was clearly raised by allegations in plaintiff's original and amended complaints and denied in defendants' answer concurrent with their motion to separate plaintiff's civil action from his administrative appeal. The issue of bias was also one basis articulated in the trial court's finding and conclusion that the Board's action had been based on substantial evidence, viewing the record as a whole. The record included a *voir dire* of the Board members at the hearing, in which plaintiff's attorney specifically examined each member for foreknowledge of the charges brought against plaintiff and for any resulting bias. This evidence indicates the issue of bias was indeed pleaded, debated and determined, or "litigated." *See* Black's Law Dictionary 841 (5th ed. 1979).

The issue of bias was not merely material and relevant to the trial court's disposition of the action, but it was essential to that disposition insofar as the issue was inseparable from the court's

assessment of the substantiality of the evidence. This is apparent in the specific words of the judgment itself that the Board's action "was not *biased*, arbitrary, or capricious; . . . but . . . was based on substantial evidence viewing the record as a whole." (Emphasis added.)

The plain words of the judgment aside, it is unimaginable that the trial court, knowing from plaintiff's complaint that the Board may have been biased against him, could have considered such bias so separable from the Board's assessment of the evidence before it as to have had no effect upon that assessment. The court had no choice but to consider the question of bias as integral to its appraisal of the substantiality of the evidence in the whole record. Despite the fact that the same trial judge presided over plaintiff's administrative appeal, apparently allowed separation of his actions, and presided over plaintiff's § 1983 action, the judgment in the administrative appeal necessarily incorporated the pervasive issue of bias. To know that bias had been alleged and to consider *voir dire* testimony addressing that very question, yet not to consider the effect of bias on the Board's conclusions, would have been to affirm Board findings, inferences, and conclusions that were fundamentally suspect. The essential character of the bias issue in plaintiff's first action is thus manifest.

In addressing the question whether "the issue of bias was *res judicata* at the time of trial," the Court of Appeals concluded that there was no such bar because of the separation of plaintiff's actions: "None of the evidence . . . presented at trial to support his charge of bias existed in the record reviewed by the courts." *Crump*, 93 N.C. App. at 177-78, 378 S.E.2d at 37. This may have been true, but it is not the appropriate test of whether a party is estopped from relitigating an issue that has already been adjudicated. It is incumbent upon a plaintiff to proffer some evidence in support of his case; the judgment will properly go against him if he has failed, by the greater weight of the evidence, to persuade the fact finder that facts supporting bias are more likely than not to exist. *See* 2 Brandis on North Carolina Evidence §§ 203, 212 (1988).

Moreover, if plaintiff, anticipating the issue of bias to figure only in his § 1983 action, deliberately withheld evidence that the Board had been less than candid on *voir dire*, he made not just a tactical error, but one that threatened to vitiate the integrity of the proceedings. This is particularly so in this case, where

withholding such evidence supporting proof of bias resulted not only in a failure to persuade the trial court, but also in a record that the verdict in plaintiff's § 1983 action suggests was a mere charade, superficially sound but actually riddled with the effects of prejudice.

If, given separation of plaintiff's actions, the trial court erroneously addressed plaintiff's allegations of Board bias, then plaintiff failed to alert the appellate court to such error. Plaintiff did in fact except to the trial court's specific findings and conclusions that the Board's decision had a rational basis in the evidence and that its action was not biased, arbitrary or capricious. These two exceptions were grouped as plaintiff's first assignment of error in his first appeal to the Court of Appeals. As that assignment is phrased, however, the issue of bias is confounded with the question of the substantiality of the evidence. Plaintiff must except and assign error *separately* to *each* finding or conclusion that he contends is not supported by the evidence, or he waives his right to challenge the issue on those grounds. *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 684, 340 S.E.2d 755, 759-60 (1986). In not assigning error to the trial court's consideration of bias and caprice *separate* from the court's finding substantial evidence to support the Board's conclusions, plaintiff waived his opportunity to challenge the trial court's conclusions regarding Board bias.

In addition, plaintiff dropped any reference to bias in his brief before the Court of Appeals and stated the issue concerning this first assignment of error incompletely, if more succinctly: "Whether there is substantial evidence in the whole record which would support the termination of career teacher Eddie Ray Crump." The body of plaintiff's brief likewise fails to mention bias, arguing only the question of the substantiality of the evidence, as if bias, had it existed, could have had no effect upon that evidence. As Justice Martin notes in his dissent, the Rules of Appellate Procedure plainly state that "[q]uestions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." Rule 28(a), Rules of Appellate Procedure. The trial court implicitly recognized in its judgment that the question of bias was inseparable from the issue of the substantiality of the evidence before the Board. In failing to flag on appeal arguable trial court error in basing judgment in part upon that issue, plaintiff abandoned the issue, and, as Justice

Martin accurately observes, the trial court's determination that the Board's action was not biased but based on substantial evidence became the law of the case.

Given that adjudication of the issue of bias in plaintiff's § 1983 action was foreclosed by its prior determination in his appeal of the Board's administrative action, severance and separate determination of defendants' § 1983 claim was inappropriate, and this appeal, including its focus on the applicability to these facts of the "one person bias rule," is not properly before us.