DISTRICT BOARD OF THE METROPOLITAN SEWERAGE DISTRICT OF BUNCOMBE COUNTY, NORTH CAROLINA v. BLUE RIDGE PLATING COMPANY, INC. AND BILL JOE BENFIELD

No. 9228SC402

(Filed 1 June 1993)

1. **Sanitary Districts § 2 (NCI3d)— prohibiting discharge into district sewerage system—administrative order—just cause**

    Just cause for the issuance of an ex parte administrative order prohibiting respondent metal plating business from further discharges into a district sewerage system was provided by samplings taken by the sewerage district indicating that respondent had discharged heavy metals into the system from 1985 through 1989; an F.B.I. investigation indicating that respondents were discharging industrial waste into the system; and a federal jury's finding that respondent willfully and intentionally discharged wastewaters containing excessively high levels of heavy metals into the district sewerage system.

    **Am Jur 2d, Pollution Control § 589.**

2. **Sanitary Districts § 2 (NCI3d)— district sewerage system— permanent sealing of business's access—sufficiency of evidence and findings**

    An order of the district board of a metropolitan sewerage district that respondent metal plating business's access to the sewerage system be permanently sealed was supported by the evidence and the board's findings that respondent agreed in 1984 to change its manufacturing process so that it would not discharge industrial waste into the sewerage system; monitoring of the system in 1989 and 1990 revealed that respondent was discharging cadmium, zinc, chromium and copper

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

into the system when it had no permit to discharge industrial wastes; respondent was convicted in federal court of discharging heavy metals into the sewerage system in violation of the federal Water Pollution Control Act; and respondent continues to perform metal plating work and has the potential to discharge harmful and hazardous chemicals into the sewerage system. Furthermore, the district board acted within its authority, and its order was not arbitrary and capricious although alternative regulatory measures were available to the board.

**Am Jur 2d, Pollution Control § 589.**

Appeal by defendant from judgment entered 22 January 1992 in Buncombe County Superior Court by Judge Robert D. Lewis. Heard in the Court of Appeals 11 March 1993.

*Robert Stevens & Cogburn, P.A., by William Clarke, for petitioner-appellee.*

*Jack W. Stewart for respondents-appellants.*

WYNN, Judge.

Petitioner-appellee, Metropolitan Sewerage District of Buncombe County ("MSD"), is a North Carolina municipal corporation created under the provisions of the Metropolitan Sewerage District Act of North Carolina General Statutes, Chapter 153, Article 25, Sections 153-295 to 153-324 (succeeded by Chapter 162A, Article 5, Sections 162A-64 through 81 (1991)). MSD owns and operates a wastewater treatment plant, collection lines and sewers in Buncombe County, North Carolina. Respondents-appellants, Blue Ridge Plating, Inc. ("Blue Ridge") and Bill Joe Benfield are "industrial users" of the municipal sewer service managed by the MSD. Blue Ridge is a local business engaged in the process of metal plating under the direction of Bill Joe Benfield, its manager and principal stockholder.

Pursuant to N.C.G.S. § 143-215.3(a)(14), MSD is delegated the authority by the Environmental Management Commission of North Carolina to implement, administer and enforce a pretreatment program for the regulation of Industrial Waste. MSD is further authorized by N.C.G.S. § 162A-69(13a) and (14) "to adopt ordinances to regulate and control the discharge of sewage in any sewerage system owned or operated by the district" and "[t]o do all acts and things

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

necessary or convenient to carry out the powers granted by this Article." Pursuant to that authority, MSD adopted a Sewer Use Ordinance effective 17 January 1989 which prohibits the discharge of waste without a "Permit to Discharge Industrial Waste." Sewer Use Ordinance, Section 4.

On or about 19 July 1991, MSD issued an ex parte restraining order and Notice of Hearing against respondents. The notice averred an enforcement action against respondents wherein they were directed to appear and show cause why MSD should not take steps to temporarily and permanently seal access to the sewer system from Blue Ridge. On 19 August 1991, both parties appeared with counsel at an administrative hearing conducted before three hearing officers appointed by the District Board of MSD. Both parties presented evidence and testimony at the hearing. Following deliberation, the hearing officers recommended to the District Board that respondents' access to the sewerage system be permanently sealed. The District Board, adopting that recommendation, issued an Order dated 17 September 1991 requiring a permanent seal pursuant to Section 15.07 of the MSD Sewer Use Ordinance. Pertinent findings of fact listed in the District Board's Order include:

7. A chronological summary of the District's portion of the history with Blue Ridge Plating and Bill Joe Benfield was introduced into evidence. The chronological summary showed in part that [respondents] were cited for violations of the Sewer Use Ordinance and Blue Ridge Plating's Permit to Discharge Industrial Waste in October and December of 1983, that the MSD instituted a civil action to prevent further discharges by [respondents] to the District's Sewerage System in 1984; that said action was resolved with an Agreement by Blue Ridge Plating to change its manufacturing process so that it would not discharge industrial waste to the District Sewerage System. In 1989 and 1990, MSD sampled the sewer line below the Blue Ridge Plating facility and found metals in the following concentrations on the following dates:

| Date | Cadmium | Zinc | Chromium | Copper |
|------|---------|------|----------|--------|
| 02/14/89 | 10.96 mg/l | 4.53 mg/l | 13.36 mg/l | |
| 02/16/89 | 10.68 mg/l | 22.16 mg/l | 6.84 mg/l | |
| 03/01/89 | | 1.66 mg/l | 3.08 mg/l | |
| 10/28/89 | 2.14 mg/l | 25.20 mg/l | 9.52 mg/l | 1.33 mg/l |
| 01/25/90 | 4.12 mg/l | 6.32 mg/l | 4.81 mg/l | |

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

8. During the period of these discharges, [respondents] had no Permit to Discharge Industrial Waste from the MSD or the State.

9. The District notified the [FBI] regarding discharges into the District Sewerage System. The FBI proceeded with a criminal investigation of [respondents]. The FBI, in the course of its investigation, discovered evidence tending to show that [respondents] were discharging industrial waste to the District Sewerage System without a Permit to Discharge. That as a result of the FBI investigation, [respondents] were tried . . . [and] the jury found that [respondents] willfully, knowingly, and intentionally discharged wastewater containing excessively high levels of heavy metals to the District Sewerage System in violation of the Federal Water Pollution Control Act and regulations promulgated thereunder.

10. That [respondents] discharged industrial waste without a Permit . . .; that the District has a need to protect its Treatment Plant and its users . . .; that [respondents] have the potential for future discharges into the system; that while the District does not have evidence of discharges . . . since January of 1990, [respondents] have the potential to discharge harmful and hazardous chemicals into the District Sewerage System.

11. That according to the testimony of [Benfield], Blue Ridge Plating continues to do plating work.

12. That the plating process requires the use of substantial amounts of water including some 77 tanks which hold 10,000 gallons of water; that Benfield testified that not all of this water is evaporated and cannot be under the system of fans and evaporation . . . on the premises of the plant.

13. That [respondents] have taken substantial actions to comply with the Order of no further discharge into the District Sewerage System, such as sawing in half, cutting and capping the discharge pipe, placing port-a-johns on the premises, and using hot tanks and fans for evaporation fluids.

14. That such actions indicate that [respondents] have no need for the District Sewerage System and that the permanent cementing by the District of any access to the System by

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

[respondents] would not be harmful to either party nor make any difference in their operation.

Based upon these findings, the District Board ordered that the respondents' access to the Sewerage System be permanently sealed by cement or other means, extinguishing all access by respondents to the sewer system. Respondents filed notice of appeal from the Order to the Superior Court Division of Buncombe County on 27 September 1991 arguing that whereas there was no evidence of immediate harm and irreparable injury, the Board issued an arbitrary, excessive and drastic remedy without due cause and thereby exceeded its authority by ordering a permanent seal. The matter was heard on 17 January 1992 and Judge Robert D. Lewis entered judgment affirming the decision of the District Board. Respondents appeal. We affirm.

Other facts necessary to the decision of this case will be discussed in the opinion.

---

The standard for both the superior court, sitting as an appellate court, and this Court, when reviewing the decision of a municipal board was set out by the North Carolina Supreme Court in *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 265 S.E.2d 379 (1980). Review of a decision entails:

1) Reviewing the record for errors in law,

2) Insuring that procedures specified by the law in both statute and ordinance are followed,

3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross examine witnesses, and inspect documents,

4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383.

In determining the sufficiency of the evidence to support the District Board's decision we apply the whole record test. The whole record test requires the examination of all competent evidence to determine if the Board's decision is based upon substantial

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

evidence. *In re Application of City of Raleigh*, 107 N.C. App. 505, 508, 421 S.E.2d 179, 180 (1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and "is more than a scintilla or a permissible inference." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). In ascertaining the substantiality of the evidence supporting the Board's decision, the court must consider "contradictory evidence or evidence from which conflicting inferences could be drawn." *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

We note initially that the transcript of the proceedings is not included in the record. Instead, appellants included what appears to be the verbatim transcript of the administrative hearing in its entirety as part of the appendix to their brief. Rule 9(a) of the North Carolina Rules of Appellate Procedure provides that our review of an appeal from the trial division is based "solely upon the record on appeal and the verbatim transcript of the proceedings, *if one is designated.*" Specifically, in cases of appeal from judgments of the superior court rendered upon review of the proceedings of administrative boards or agencies, the record must contain, among other things, "copies of all items properly before the superior court as are necessary for an understanding of all errors assigned." N.C.R. App. P. 9(a)(2)e. This includes "notice of approval or order settling the record on appeal and settling the verbatim transcript of proceedings, if one is filed pursuant to Rule 9(c)(2) and (3)." Pursuant to Rule 9(c), the appellant is responsible for presenting the transcript for review by the appellate court by either including it in the record on appeal in "narrative" form, or by "designating" in the record that the verbatim transcript is settled and filing it contemporaneously with the record on appeal. Appellants in this case failed to include in the record an approval or order settling the verbatim transcript of the administrative hearing proceedings, and none was filed by appellants pursuant to Rule 9(c)(2) or (3). Although included in the appellant's brief, a party's appendix is not deemed part of the record. However, because the parties are not in dispute as to what evidence was produced at the hearing, and because conducting a "whole record" test is impossible without the "whole record," we have elected, pursuant to Rule 2, to suspend the requirement that the transcript be included or designated in the record and have reviewed the transcript so that we may conduct a proper judicial review of this case. *See*, N.C.R. App. P. 2.

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

Respondents-appellants' sole assignment of error contends that the trial court erred in sustaining the decision of the District Board to permanently seal all access to the District's sewer system. Respondents make three specific arguments to support their contention: 1) that the ex parte administrative order of 18 July 1991 was issued without just cause; 2) that the 17 September 1991 Order of the District Board was issued upon an erroneous application of the law; and 3) that the decision of the District Board was unnecessarily excessive, capricious and arbitrary in its application.

I.

[1]    Respondents' first contention alleges that the petitioners issued the ex parte administrative order of 18 July 1991 without just cause. The order, issued by W.H. Mull, Engineer-Manager of MSD, outlined eleven specific findings of fact and based on those findings ordered that "pursuant to Section 15.02.05 of the Sewer Use Ordinance, any discharge from Blue Ridge Plating to the District Sewerage System is hereby prohibited." The engineer-manager is authorized to issue such an order pursuant to Section 15.02 of the Sewer Use Ordinance, entitled "Actions by Engineer-Manager," which reads:

> If a User of the MSD Sewerage System proposes to discharge, discharges or accidentally discharges Wastewater or any substance in a manner that is in violation of any Section of this ordinance, any condition of a Permit . . . or applicable State or Federal laws and regulations; the Engineer-Manager may take any one or a combination of the Actions listed:

> .01 *Prohibit the discharge of such Wastewater or substance.*

The ordinance clearly gives the engineer-manager the power to issue an ex parte order such as the one at issue here where a user is operating in violation of the Sewer Use Ordinance. Evidence tending to support a finding that respondents acted in violation of ordinance requirements includes: samplings taken by MSD which indicated that respondents had discharged heavy metals over the period from 1985 through 1989; an FBI-conducted investigation which indicated that respondents were discharging industrial waste into the sewerage system; and a jury finding that respondents willfully, knowingly and intentionally discharged wastewaters containing excessively high levels of heavy metals to the District

IN THE COURT OF APPEALS          393

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

Sewerage System. This evidence was clearly sufficient to provide just cause to support the administrative order prohibiting further discharges to the sewerage system.

## II.

[2] Respondents also argue that the superior court erred in sustaining the decision of the District Board to permanently seal respondents' access to the sewer system because the order of the District Board was based upon an erroneous application of law. Specifically, respondents contend that because alternative regulatory measures were available and because Blue Ridge had not been cited for a violation since January 1990, the action of the District Board was "tantamount to an unlawful deprivation of a protected property right that smacks of both unequal protection of the laws and a biased administration of the regulatory scheme(s) of the [MSD]."

Statutory and ordinance provisions provide the authority for enforcement actions by MSD against users for ordinance violations. N.C.G.S. § 162A-81 provides that with respect to the adoption and enforcement of ordinances:

> (a) A district shall have the same power as a city under G.S. 160A-175 to assess civil fines and penalties for violation of its ordinances, and may secure injunctions to further insure compliance with its ordinances as provided by this section.

> (e) An ordinance may provide, when appropriate, that each day's continuing violation shall be a separate and distinct offense.

Section 15.03 of the ordinance enacted by MSD provides for permissible enforcement actions by the District Board as follows:

> Action may be taken by the District Board upon receiving a report from the Engineer-Manager outlining details of the User's failure to comply with Actions of the Engineer-Manager taken pursuant to Section 15.02. The District Board may order a User violating this Ordinance to show cause before the District Board why proposed Enforcement Action should not be taken.

Moreover, Section 15.02.05 permits the Engineer-Manager to "[t]ake such other remedial Action as may be deemed to be desirable or necessary to achieve the purposes of this Ordinance including the revocation of the User's Permit to Discharge Industrial Waste."

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

Respondents do not dispute that based upon these statutory provisions and the Sewer Use Ordinance the MSD has the *authority* to permanently seal a user's access to the District Sewer System. Rather, respondents contend that because alternative penalties were available, the decision to impose such a penalty in this case was not supported by substantial evidence and therefore not warranted by law.

The evidence indicates that between February of 1989 and 25 January 1990, the industrial monitoring staff of MSD conducted samplings of the sewer line connection below the Blue Ridge facility and on five occasions reported finding concentrations of cadmium, zinc, chromium and copper in excess of the limits established by the MSD Sewer Use Ordinance as well as certain State and Federal regulations. Based on the discharge violations of 28 October 1989 and 25 January 1990, the MSD contacted the Federal Bureau of Investigation and requested a criminal investigation which in turn resulted in the indictment, trial and conviction of respondents for violation of the Clean Water Act of Title 33, United States Code, section 1317 and 1319, and Title 40, Code of Federal Regulations, section 413. *United States of America v. Blue Ridge Plating Company, Inc.*, a corporation, and Bill Joe Benfield, A-CR-90-143, United States Dist. Court, Western District of North Carolina.

Following the July 1991 conviction, MSD issued the ex parte order prohibiting further discharges and issued a Notice of Hearing, requiring respondents to appear and show cause why the District should not permanently seal all access to the sewerage system. Pursuant to the ex parte order, respondents discontinued all sewer line use.

Both parties were represented by counsel at the hearing on 19 August 1991. Monty Payne, Industrial Waste Coordinator for MSD, testified at the hearing. Payne testified that an Order of Enforcement was issued against respondents in August of 1983 and again in November of 1983 for the discharge of heavy metals in violation of permit limits and sewer use ordinance limits. Respondents were subsequently assessed a civil penalty for both violations. Payne further testified that court action was brought against respondents in 1984 for the discharge of heavy metals. That action was settled based upon an agreement by respondents to discontinue all heavy metal industrial waste discharges. Payne then outlined the monitoring history compiled by MSD which

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

showed periodic high levels of metal concentrations and industrial waste discharges from 1985 through 1990.

Bill Joe Benfield testified for the respondents, denying the discharge of metals to the sewerage system. Mr. Benfield also testified that he had seen a truck "dump stuff" in the sewer line near the location of Blue Ridge Plating on eighteen different occasions but presented no evidence supporting this statement. He explained the operating processes of Blue Ridge Plating and stated that Blue Ridge continues to do plating work. Mr. Benfield stated that respondents had cut and capped the sewage discharge pipe in the plant. As a result, port-a-johns were installed on the premises. At the time of the hearing, respondents had discontinued all sewerage system use.

Based upon the evidence presented, the Board found that respondents have the potential to discharge harmful and hazardous chemicals into the District Sewerage System if permitted to continue using the system. Our review of the whole record in this case reveals that the findings of fact of the Board have adequate support and further that the Board acted within its statutory authority in imposing a regulatory penalty for the discharge of harmful industrial waste which was warranted by law. The findings were based on data that is beyond serious dispute or evidence that is manifestly credible. Respondents have not attempted to demonstrate, except in the most general sense, how the challenged action lacked sufficient evidence. In addition, respondents failed to support any of their arguments with legal authority. The whole record test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result. *In re Appeal from Environmental Management Comm.*, 80 N.C. App. 1, 6, 341 S.E.2d 588, 591, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 139 (1986). Based upon our review, we hold that the District Board's findings were based on substantial evidence. Moreover, those findings support the Board's action to permanently seal respondents' access to the Sewerage System.

III.

Respondents lastly argue that the decision of the District Board was excessive, arbitrary and capricious in its application. After outlining the findings of fact stated above, the Board concluded that:

DIST. BD. OF METRO. SEWERAGE DIST. v. BLUE RIDGE PLATING CO.

[110 N.C. App. 386 (1993)]

1. This action was properly brought pursuant to Section 15.06 of the MSD Sewer Use Ordinance and properly noticed to all parties.

2. That the Hearing Officers have jurisdiction to hear the testimony and review the evidence of the parties in this matter.

3. That Blue Ridge Plating and Bill J. Benfield failed to show cause why the District should not proceed to permanently seal off access to the District Sewerage System.

Based upon the findings and conclusions, the Board ordered the permanent seal of respondents' access to the District Sewerage System. The judgment entered by the trial judge affirming the decision of the MSD states:

[T]he Court having considered the whole record in accordance with article 4 of G.S. 150B together with briefs and arguments of counsel, enters the following judgment:

1. MSD violated no constitutional provisions;

2. MSD did not exceed its statutory authority or jurisdiction;

3. the decision was made upon lawful procedures unaffected by any error of law; and

4. in view of the entire record, the decision was supported by substantial evidence and was not arbitrary or capricious.

As a reviewing court, we should not second guess the wisdom of local municipal officials in selecting between a number of alternative remedies or penalties. See Dize Awning & Tent Co. v. City of Winston-Salem, 29 N.C. App. 297, 224 S.E.2d 257, disc. rev. denied, 290 N.C. 667, 228 S.E.2d 451 (1976). Having conducted our own review of the whole record, we also hold that the District Board acted within its authority; imposed a penalty supported by substantial evidence; and in light of the evidence, imposed a penalty that was not arbitrary and capricious.

As a result, the judgment of the trial court is

Affirmed.

Judges Eagles and Cozort concur.